<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

NEW JERSEY DEER CONTROL, LLC,

    Plaintiff,

v.

EN GARDE DEER DEFENSE LLC, *et al.*,

    Defendants.

Civil Action No. 24-5587 (MAS) (RLS)

**MEMORANDUM OPINION**

---

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on Plaintiff New Jersey Deer Control, LLC's ("Plaintiff" or "NJDC") Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 2) against Defendants En Garde Deer Defense, LLC ("En Garde") and its owner, Jeffrey Ardo ("Ardo") (collectively, "Defendants"). Defendants opposed the Motion (ECF No. 13), and Plaintiff replied (ECF No. 14). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's Motion is denied.

**I.    BACKGROUND**

    **A.    Factual Background**

The underlying facts giving rise to this action are relatively straightforward, but heavily disputed. By way of background, NJDC is a deer repellant service provider for residential, landscaping, and nursery customers throughout New Jersey and New York. (Compl. ¶ 7, ECF No. 1.) Over the last twenty years, Plaintiff has utilized a "formerly patented deer formula" in

conjunction with "proprietary and confidential spraying techniques" to offer deer damage solutions for its customers. (*Id.* ¶ 8.) NJDC refers to its techniques and strategies as a "System" that constitutes protectable "Trade Secrets."[1] (*Id.* ¶¶ 8-9.) In short, NJDC's System and Trade Secrets are composed primarily of: (1) the deer repellant's formula, creation, and storage; (2) the best practices for applying the formula; and (3) various business practices for optimal support of NJDC's operations. (*See id.*) To safeguard its System and Trade Secrets, NJDC requires its "train spray technicians", employees, and licensees to sign confidentiality and non-disclosure agreements. (*Id.* ¶ 10.)

At the center of this dispute is a Licensing Agreement between Plaintiff and Defendants. (*Id.* ¶ 11.) In Plaintiff's telling, Ardo, with little to no experience in the deer control industry, approached NJDC in early 2017 to use "NJDC's then-patented deer repellant spray and proprietary and confidential application techniques and strategies for a deer repellant and damage control business" in the State of Ohio. (*Id.*) These discussions culminated in Ardo's creation of En Garde, a limited liability company based in Ohio, of which he is the sole member. (*Id.*; *see also* Cert. of Jeffrey Ardo ["Ardo Cert."] ¶ 5, ECF No. 13-1.) En Garde operates "exclusively" in Ohio and does not operate in New Jersey. (Ardo Cert. ¶ 7.)

---

[1] Plaintiff alleges its System and Trade Secrets are, among other things, comprised of: (1) "a confidential and proprietary repellant mixing procedure (beyond that claimed in the patent for the repellant formula)"; (2) "confidential and proprietary strategies concerning the use of specific spray applicators"; (3) a "confidential and proprietary spray schedule"; (4) compilations of data for various plant species, respective tolerance to deer repellant spray, and training materials for spray technicians; (5) "a confidential list of key preferred vendors"; and (6) "customized, confidential, and proprietary project estimating, bidding, and pricing methodology." (Compl. ¶ 9.)

On March 6, 2017, the parties entered the subject Licensing Agreement, wherein Defendants[2] received a seven-year license to: (1) "obtain the right to use the patented formula in connection with the deer repellant spraying service"; (2) "obtain the rights to use the techniques and strategies developed by [NJDC] in the Territory . . . and to receive training and other assistance provided by [NJDC]"; and (3) "obtain the rights to use the [Trademarks[3].]" (*See* Licensing Agreement 1, annexed to Complaint as "Exhibit B", ECF No. 1.) Specifically, Defendants were granted a "non-exclusive, royalty-bearing license to use [NJDC's] Trademarks and to use, sell, and offer for sale the System limited to the Territory". (*Id.* §§ 2.1, 10.1.) The Territory covered the following counties in Ohio: "Cuyahoga, Geauga, Medina, Lake, Summit, Portage, Stark, and Lorrain" (the "Territory"). (*Id.* § 1.3.)[4]

In exchange for access to NJDC's System, Trademarks, and Trade Secrets, Defendants agreed to compensate NJDC with a royalty fee. (*Id.* ¶¶ 17-18.) (*See also* Licensing Agreement § 3, § 3.2.) Defendants also agreed to various confidentiality, non-disclosure, and restrictive covenants following termination of the Licensing Agreement. (*Id.* ¶ 18.) Defendants agreed, for example, to discontinue the use or sale of the Trademarks and System within thirty days of termination. (Licensing Agreement §§ 10.3, 11.1.) Under Section 11.5(b) of the Licensing Agreement, it was further stipulated that:

> upon the expiration, termination, or transfer of all [of En Garde's] interest in this [Licensing] Agreement, or from the time the [sic] [Ardo] ceases to be a Principal of [En Garde], and continuing for three (3) years thereafter, neither [En Garde] nor [Ardo] . . . shall

---

[2] The Licensing Agreement "was signed by Ardo both individually and on behalf of En Garde in his capacity as its 'Principal.'" (Compl. ¶ 12.)

[3] NJDC's "Trademarks" are defined to include the marks of "DEER REPELLENT SPECIALISTS" and "DEER GUYS". (Compl. ¶ 19.)

[4] Defendants received an option to renew the Licensing Agreement for an additional seven years so long as it provided NJDC with advance written notice. (*Id.* § 10.1.1.)

3

> directly or indirectly own, manage, operate, join, control, or participate in the ownership, management, operation, or control of any business offering deer repellant and/or deer control services in the Territory or directly or indirectly divert any business, customer, or potential customer of the business to any competitor, or do or perform any other act injurious or prejudicial to the goodwill associated with the Trademark[s] and System.

(*Id.* § 11.5(b).)

For the next few years, the parties operated under the Licensing Agreement without incident. (Compl. ¶ 26.) Plaintiff states that it upheld its end of the bargain by providing Defendants with access to "the System, the NJDC training and support, and the NJDC goodwill associated with [the] Trademarks[,]" allowing En Garde to "quickly become a leading deer repellant provider throughout the Territory." (*Id.* ¶¶ 26-27.) Defendants similarly represent that that they upheld their obligations and paid Plaintiff a royalty fee of $365,000 over the course of their agreement. (Ardo Cert. ¶ 16.)

In September 2022, Plaintiff's patent expired, at which time Ardo asserts that he "no longer saw the value of continuing the [L]icens[ing] [A]greement after it[s] expir[ation] in March 2024." (Compl. ¶ 29; *see also* Def.'s Opp'n Br., Ex. 2, ECF No. 13-2.) In October 2023, Ardo communicated to NJDC that he did not intend to renew the Licensing Agreement and that he would proceed with operating En Garde in the Ohio Territory. (Compl. ¶ 29.)

On March 6, 2024, the Licensing Agreement expired. (Compl. ¶ 30.) That same day, Plaintiff sent correspondence to Ardo reiterating the Licensing Agreement's post-termination restrictions and covenants and advising that a breach of the same would result in legal action. (*Id.* ¶ 31.) Plaintiff alleges that Ardo nevertheless "continues to operate En Garde within the Territory, and upon information and belief uses NJDC's Trade Secrets, including the proprietary and confidential System, techniques, and training provided by NJDC." (*Id.* ¶ 33.)

**B.     Procedural History**

This federal action commenced on April 24, 2024. (Compl.) In its Complaint, Plaintiff seeks injunctive relief and damages arising from the alleged misappropriation and misuse of Plaintiff's confidential information and trade secrets. (*See generally id.*) The Complaint brings causes of action for breach of contract (Count One), breach of the covenant of good faith and fair dealing (Count Two), unjust enrichment (Count Three), violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Count Four), and violation of the New Jersey Trade Secrets Act, N.J. Stat. Ann. § 56:15-1, *et al.* (Count Five). (*Id.* ¶¶ 36-69.)

Alongside the Complaint is Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction. (Pl.'s Moving Br., ECF No. 2-1.) By way of its Motion, Plaintiff seeks to: (1) enjoin Defendants from "soliciting and/or seeking to provide deer repellant and deer control services to any customer in the eight restricted counties . . . until March 6, 2027"; (2) enjoin Defendants "from utilizing or otherwise disclosing any of NJDC's [T]rade [S]ecrets, including without limitation the Trademarks and System" and any other information relating to the System and NJDC's business model; (3) enjoin En Garde from providing deer repellant and deer control services to any NJDC customers or prospective customers; and (4) require Ardo to provide the names of all customers located in the Territory that En Garde has provided services to since termination of the Licensing Agreement. (*See* Proposed Order 2, ECF No. 2.) As to the request for a Temporary Restraining Order, Plaintiff seeks the same relief "pending the return date [of its Motion], and the Court's decision on the preliminary injunction." (*Id.* at 2.)

On April 30, 2024, the Court held a telephone conference with both parties to discuss the Motion and set an expedited briefing schedule.[5] (*See* ECF No. 12.) Defendants opposed the Motion thereafter (Def.'s Opp'n Br., ECF No. 13) and Plaintiff replied (Pl.'s Reply Br., ECF No. 14). This matter is now ripe for review.

## II. LEGAL STANDARD

"The standard for granting a temporary restraining order is the same as that for a preliminary injunction."[6] *Nat'l Inst. of Sci. & Tech. v. Mohapatra*, No. 20-12361, 2020 WL 6323683, at *6 (D.N.J. Oct. 28, 2020) (quoting *Nutrasweet Co. v. Vit-Mar Enters.*, 112 F.3d 689, 693 (3d Cir. 1997)). To warrant preliminary injunctive relief, a plaintiff must establish the following four elements: "(1) the plaintiff is likely to succeed on the merits; (2) denying the injunction will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in greater harm to the defendant; and (4) the injunction is in the public interest." *Watchung Spring Water Co. v. Nestle Waters N. Am. Inc.*, No. 14-4984, 2014 WL 5392065, at *2 (D.N.J. Oct. 23, 2014) (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002)). "A [c]ourt will consider all four factors, but the first two are essential." *Leddy v. N. Valley Reg'l High Sch. Dist.*, No 17-5245, 2017 WL 3923291, at *7 (D.N.J. Sept. 5, 2017). Finally, "[p]reliminary injunctive relief is an extraordinary remedy[,] and should be granted *only* in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (emphasis added) (internal quotation marks and citation omitted).

---

[5] During the telephone conference, Plaintiff's request for a Temporary Restraining Order pending the briefing of the Motion was denied. The Court determined such injunctive relief to be inappropriate without first having heard from Defendants in opposition.

[6] Because the standard for granting a Temporary Restraining Order and a Preliminary Injunction is the same, the Court's analysis set forth herein shall apply to both requests for relief.

## III. DISCUSSION

Plaintiff moves for injunctive relief on the basis that, despite Defendants' post-termination obligations, Defendants continue to operate En Garde in the Ohio Territory, continue to use NJDC's proprietary System, Trademarks, and Trade Secrets, and in essence, have openly flouted their contractual obligations. (Pl.'s Moving Br. 8-9.) While the parties' briefs focus on the likelihood of success on the merits of Plaintiff's claims (*see, e.g.*, Pl.'s Moving Br. 10-22), this Court's analysis begins and ends on the irreparable harm prong.

### A. Irreparable Harm

Demonstrating irreparable harm is perhaps the single most important prerequisite for issuing a preliminary injunction. *Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389, 393 (D.N.J. 1989) (citation omitted). The party seeking injunctive relief must demonstrate irreparable harm by "a clear showing of immediate irreparable injury." *Donlow v. Garfield Park Acad.*, No. 09-6248, 2010 WL 1381010, at * 1 (D.N.J. Apr. 1, 2010). Before issuing preliminary injunctive relief, the court must be convinced that the injunction is "the only way of protecting the plaintiff[s] from [the] harm" in question. *See Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 731 (3d Cir. 2009). "Establishing a risk of irreparable harm is not enough. [Rather,] a clear showing of immediate irreparable injury is required." *Naccarati v. Wilkins Township*, 846 F. Supp. 405, 408 (W.D. Pa. 1993) (citing *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987)). Stated otherwise, the risk of irreparable harm must not be speculative. *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994). Furthermore, a court cannot find irreparable harm where a defendant's breach can be adequately remedied by monetary damages. *Peterson v. HVM L.L.C.*, No. 14-1137, 2015 WL 3648839, at *6 (D.N.J. June 11, 2015).

Courts within this District routinely deny preliminary injunction motions when a plaintiff fails to carry its burden to demonstrate the likelihood of irreparable injury. *See, e.g., Brandywine Prod. Grp. Int'l v. Universal Distrib. Ctr. LLC*, No. 16-2248, 2016 WL 5402744, at *3 (D.N.J. Sept. 27, 2016) (finding no irreparable harm where there was "little factual record on which to rule that irreparable harm to [movant's] place in the market is likely and imminent"); *Ferring Pharms. Inc. v. Watson Pharms.*, No. 12-5824, 2013 WL 1405226, at *5 (D.N.J. Apr. 4, 2013) (finding no irreparable injury because the movant had "not alleged facts sufficient to prove that it was harmed, or that the alleged harm was irreparable and could only be cured by a preliminary injunction"), *aff'd sub nom.*, 765 F.3d 205 (3d Cir. 2014); *Gentile v. SEC & Exch. Comm'n*, No. 19-5155, 2019 WL 1091068, at *3 (D.N.J. Mar. 8, 2019) (finding no irreparable injury because the movant had "not sufficiently explained why any financial harm associated with lost business caused by continued SEC investigation could not be quantified in the future"). This confirms the notion that "[i]njunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties." *Cont'l Grp., v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980).

At this nascent stage in the proceedings and without having exchanged any factual discovery, the Court finds that Plaintiff has not made a clear showing of immediate irreparable harm necessary to warrant injunctive relief.[7] While Plaintiff alleges generally that Ardo's continued operation of En Garde poses a risk of loss of control of its Trade Secrets and the potential disclosure of its confidential information to unidentified third parties, (Pl.'s Moving Br. 24; Pl.'s

---

[7] Plaintiff argues it will suffer irreparable harm because (1) Defendants are "active[ly] possessing" and "are in a position to disclose NJDC's" Trade Secrets (Pl.'s Reply Br. 13); (2) Defendants' alleged use of NJDC's Trade Secrets risks exposure to third-party employees and contractors, who may, in turn, further divest NJDC's Trade Secrets (Pl.'s Moving Br. 24); and (3) "it will be impossible for NJDC to establish itself or another licensee within the Territory if Defendants are to continue operating." (*Id.* at 25.)

Reply Br. 13), Plaintiff has not come forward with sufficient proofs to demonstrate that Defendants are actively compromising Plaintiff's goodwill, reputation, Trademarks, or Trade Secrets.

First, the Complaint alleges "upon information and belief" that Defendants are using Plaintiff's "Trade Secrets, including the proprietary and confidential System, techniques, and training provided by [Plaintiff]." (Compl. ¶ 29.) This kind of speculation, without adequate evidentiary support, does not amount to the standard of proof necessary to establish irreparable harm. *Bradley v. Amazon.com, Inc.*, No. 17-1587, 2021 WL 5631754, at *2 (E.D. Pa. Dec. 1, 2021) ("[A]n assertion of irreparable harm must be based on concrete evidence and cannot be sustained on the basis of bald and conclusory statements."); *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 781 (D.N.J. Mar. 28, 2013) (denying injunctive relief where "alleged injury is not immediate, irreparable, or of a peculiar nature" but rather "appears to be rather speculative"); *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000) (same).

The proofs submitted in support of Plaintiff's Motion do not fare any better. As to Defendants' alleged continued use of Plaintiff's Trademarks, Plaintiff argues that En Garde "virtually copied NJDC's website in style, format, and with nearly verbatim copy, including the use of NJDC controlled federally registered and unregistered trademarks." (Pl.'s Moving Br. 12.) Plaintiff admits, however, that Defendants' actions occurred "until the expiration of the [Licensing] Agreement" and that "En Garde's website *has since been changed*." (*Id.* (emphasis added).) Without more, Defendants' past conduct, which may have been fully ameliorated since the expiration of the Licensing Agreement, does not move the needle in favor of establishing irreparable harm. *TriFound Fin., LLC v. Greenberg*, No. 20-19303, 2021 WL 194763, at *5 (D.N.J. Jan. 20, 2021) ("The irreparable harm inquiry concerns threat of future harm, *not past harm*.").

Plaintiff has also failed to make a clear showing, at this juncture, that Defendants are actively infringing on its goodwill. In some contexts, the Third Circuit has recognized that the "loss of control of reputation, loss of trade, and loss of goodwill" may constitute irreparable harm. *See Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) (citing *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d Cir. 1990)). In such circumstances, the movant must offer "evidence that the moving party has not been able to perform on contracts with third parties because of the loss, or for it to point to a loss of goodwill or reputation with specific customers." *Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.*, No. 22-1710, 2022 WL 3536494, at *7 (3d Cir. Aug. 5, 2022) (citing *Bennington Foods LLC v. St. Croix Renaissance Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008)). Plaintiff's Motion falls short in several respects.

First, Plaintiff has not clearly shown that Defendants are continuing to use its System, Trade Secrets, or Trademarks. Plaintiff's Motion lends support from various screenshots from En Garde's Yelp page, a March 2024 screenshot from En Garde's website, and an article from March 2024 referring to Mr. Ardo's and En Garde's services. (*See* Marino Cert., Exhibits A-D, ECF No. 2-2.) These screenshots, however, do not show with any due certainty that Defendants are actively utilizing NJDC's Trademarks, Trade Secrets, or goodwill.

The Court also bears in mind that there are significant factual disparities in the parties' submissions. In opposing Plaintiff's Motion, Defendants paint a starkly different picture. Ardo provides a sworn certification indicating that En Garde is "not a franchise of Plaintiff or its parents, subsidiaries, [or] affiliates" and that Ardo was never provided with a "turn-key" ready business model as Plaintiff proclaims. (Ardo Cert. ¶¶ 24, 25.) Instead, Ardo states that he invested his own money and time in launching En Garde "out of [his] garage" and spent hours building his business

from the ground up. (*Id.* ¶ 30.) Ardo certifies that Plaintiff never required him to follow any business model, never provided him with repellent or equipment, never required him to obtain supplies or equipment from any vendor, never provided him with customers or leads, and never invoiced or received payments from En Garde's customers. (*Id.* ¶¶ 31-38.) In summary, Ardo asserts that it was merely a *licensee*—not a franchisee—and neither Ardo nor any other employee, contractor, representative, or agent has ever held En Garde out to be a franchise of Plaintiff. (Def.'s Opp'n Br. 8.) This conflicting testimony weighs against granting preliminary injunctive relief. *Ecosave Automation, Inc. v. Del. Valley Automation, LLC*, 540 F. Supp. 3d 491, 501 (E.D. Pa. May 19, 2021) (denying preliminary injunctive relief where Plaintiff "had the burden to present sufficient evidence that it even possessed trade secrets worthy of protecting" and defendants presented "clearly conflicting testimony" as to whether trade secrets exist).

Second, and most notably, it is not clear how Plaintiff is unable to perform on contracts with third parties or how it will suffer a loss of goodwill or reputation with specific customers given that the parties do not compete in the same territories. *See Golden Fortune*, 2022 WL 3536494, at *7. In *HouseMaster SPV LLC v. Burke*, this Court recognized there to be a risk of irreparable harm where a franchisee "continued performing inspections in and near his old territory for nearly a year after terminating the [f]ranchise [a]greement[.]" No. 12-13411, 2022 WL 2373874, at *10 (D.N.J. June 30, 2022). There, after exchanging some limited discovery, the moving franchisor sufficiently demonstrated irreparable harm by establishing that its former franchisee was, among other things, soliciting the franchisor's customers within 25 miles of the formerly approved territory, continuing to work with the franchisor's former real estate contacts, and that the franchisee was "directly taking business" from the franchisor. *Id.* at *24-25. Worse yet, it was shown that "[the franchisee] advertised that [the franchisor] was transforming into [a

11

new entity], creating a concrete risk that customers could be confused as to whether the franchise was rebranding." *Id.* at *25. Based on this evidence, this Court determined in *Housemaster* that the franchisee's actions deteriorated the franchisor's goodwill, diverted customers to the franchisee, created customer confusion, and hindered the franchisor's ability to refranchise. *Id.* at *25-26. All of which the Court found "could not be fully remedied through monetary compensation." *Id.*

Such facts are lacking in the case at bar. There is no dispute that En Garde limits its operations to Ohio. (Ardo Cert. ¶ 7 ("En Garde operates exclusively in Northeast Ohio; it does not operate in New Jersey.").) The two entities operate in different states and Plaintiff does not appear to have an affiliate or franchise that operates in Ohio. (Ardo Cert. ¶¶ 7, 42.) At best, Plaintiff argues that Defendants' operations may curtail its future business *if* Plaintiff someday decides to establish "itself or another licensee within the Territory" or that "[a]ny new prospective licensee" may be disinclined to operate in the same geographic confines knowing Defendants operate there. (Pl.'s Moving Br. 24-25.) Although these future events are conceivable, it is well settled that the Court cannot grant a preliminary injunction based on allegations that are "speculative and based on a remote future injury." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) ("a showing of irreparable harm is insufficient if the harm will occur only in the indefinite future") (citation omitted). The Court agrees with Defendants that enjoining their business to prevent "phantom" or imaginative competition would be unreasonable. (Def.'s Opp'n Br. 10.) Accordingly, based on the current record, the Court finds that the potential harm of customer confusion or loss of reputation control is minimal given that Defendants state that they do not

affiliate themselves with Plaintiff, there is no overlap in their customer base,[8] and they do not compete with Plaintiff in the same territories.

Finally, "[a]lthough in certain situations a loss of goodwill may be irreparable," it does not rise to the level of irreparable where the alleged harm is a quantifiable loss of business. *ACE American Ins.*, 306 F. App'x at 731. Where a breach of a non-compete agreement results in the loss of business, courts have found that the injury is generally redressable by money damages. *See, e.g., Howmedica Osteonics v. Zimmer Inc.*, 461 F. App'x 192, 197 n.7 (3d Cir. 2012) (striking portion of injunction because plaintiff "can seek damages for business that was 'moved' tortiously or in violation of non-compete agreements"); *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) (holding, despite allegations that plaintiff stood to lose customers and, therefore, profits, from violation of restrictive covenant, "the harm flowing therefrom is compensable by money damages"). Aside from Plaintiff's loss of royalties, which can be remedied should this case proceed on the merits to trial, it is unclear what other harm will befall Plaintiff from Defendants' continued operations. In other words, it appears that any alleged harm that Plaintiff has suffered from Defendants' potential breach of the Licensing Agreement can be remedied by money damages.

In sum, the Court finds that Plaintiff has not made a clear showing of irreparable harm warranting preliminary injunctive relief. As Plaintiff has failed to meet this factor of preliminary injunctive relief, the Court need not consider the remaining factors. *See Am. Express Travel Related Servs., Inc. v. Sidamon—Eristoff*, 669 F.3d 359, 374 (3d Cir. 2012) (declining to address the remaining injunction factors when the plaintiff failed to meet one factor); *Cortazzo v. City of*

---

[8] Defendants also submit a certification from Kimberly Biglow, a longstanding customer of En Garde, who states that at the time she became a customer, she did not have any knowledge of Plaintiff and did not recognize Plaintiff's name. (*See* Biglow Cert. ¶¶ 3, 8, 10, ECF No. 13-3.)

*Reading*, No. 14-2513, 2015 WL 1380072, at *4 (E.D. Pa. Mar. 26, 2015) ("It is not necessary to address any of the remaining factors for a preliminary injunction in light of plaintiffs' failure to show the likelihood of irreparable harm."). To be clear, the Court does not reach a conclusion with respect to the ultimate merits of Plaintiff's case. The Court only concludes that, at this stage of the litigation, Plaintiff's failure to show irreparable harm compels the denial of its Motion.

**B.     Expedited Discovery**

As stated, *supra*, Plaintiff's submissions, certifications, and exhibits offer limited evidentiary support necessary for preliminary injunctive relief. The Court finds good cause to allow the parties to engage in expedited discovery to probe the veracity of Plaintiff's allegations. (Def.'s Opp'n Br. 15.) "[E]xpedited discovery is particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Phila. Newspapers v. Gannett Sattellite Info. Network*, No. 98-2782, 1998 WL 404820, at *2 (E.D. Pa. July 15, 1998) (citation omitted). Following expedited discovery, if appropriate, Plaintiff may file a renewed motion for a preliminary injunction. *See, e.g., Tracey v. Recovco Mortg. Mgmt. LLC*, 451 F. Supp. 3d 337, 345 (D.N.J. 2020).

**IV.     CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction is denied. An appropriate order will follow this Memorandum Opinion.

Dated: 6/3/2024

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE